## STATE of Maine

v.

## SHAWN B. and Craig S.

Supreme Judicial Court of Maine.

Argued June 16, 1992.

Decided Aug. 20, 1992.

David L. Spencer (orally), Asst. Dist. Atty., Wiscasset, for plaintiff.

William C. Leonard (orally), Bath, for Shawn B.

Ronald W. Bourget (orally), Bourget & Bourget, P.A., Augusta, for Craig S.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

COLLINS, Justice.

Shawn B. and Craig S. appeal from a Juvenile Court (Wiscasset, *O'Rourke, J.*) adjudication of the juvenile offense of manslaughter pursuant to 17–A M.R.S.A. § 203(1)(A) (Supp.1991). The Superior Court (Lincoln County, *Lipez, J.*) vacated the judgment and remanded the case to the Juvenile Court for reconsideration, excluding inadmissible expert testimony. On remand, without further proceedings, the Juvenile Court (Wiscasset, *O'Rourke, J.*) again found the two guilty. The judgment was affirmed by the Superior Court (Lincoln County, *Brennan, J.*). Because the evidence was insufficient to prove the element of causation beyond a reasonable doubt, we vacate the judgment.

I.

Both Shawn B. and Craig S. were charged as juveniles with manslaughter in the death of Marjorie Maybury in an automobile accident involving cars they were driving. In its amended findings and order on remand, the court found the facts as follows:

On June 11, 1987, Shawn B. and Craig S., along with some classmates, had decided to skip school and go swimming. They were driving north on route 218 in Wiscasset. Craig was in front, driving a black Chevrolet Caprice. Shawn followed, driving a red Pontiac LeMans. Shawn had two passengers, Craig had none. Both vehicles accelerated to over 45 m.p.h. (the speed limit) as they left the village area. A passenger in

the second vehicle testified that he fastened his seat-belt at that time "to be safe." He also testified that the vehicles maintained that speed and that the vehicle he was in remained 2–3 car lengths behind the first vehicle.

Eric Aldersley testified that he saw the two cars a short distance from the scene of the collisions. He estimated that they were separated by only one car length and were "certainly going faster than the 45 m.p.h. speed limit." He thought they were going less than 70–75 m.p.h.

As the two vehicles approached the intersection of route 218 with Blagdon Ridge Road, two vehicles approached the same intersection from the opposite direction. Harold Maybury was driving the lead vehicle, a silver Chevrolet Chevette, with his wife Marjorie in the passenger seat. Ethel Bomengen drove the second, a Chevrolet Cavalier. Bomengen testified that she was travelling about 45 m.p.h. As she approached the intersection of Blagdon Ridge Road, she saw the Maybury vehicle slow and pull toward the center line, with its brake lights on and left turn signal blinking. As she pulled to the right, by looking over the Maybury car, she could see the roofs of the cars approaching from the other direction. They appeared to be going in excess of 45 m.p.h.

The front passenger in Shawn B.'s car, Anthony P., testified that, on cresting a hill that is nine tenths of a mile south of the intersection, he could see the two southbound vehicles approaching the intersection and could tell that the lead (Maybury) vehicle was pulling left, toward the center line. He then lost sight of the vehicles as the car he was in entered a dip in the road. It was estimated that this dip would obscure a northbound vehicle's view of the intersection while it was between 9/10 of a mile and 486 feet from that intersection. As they emerged from the dip in the road, Anthony P. saw the brake lights in Craig S.'s vehicle light up. Then he saw the vehicle swerve off the road, and the Maybury vehicle appeared, sitting broadside in the road.

The court concluded that Craig S. struck the front end of the Maybury vehicle. The collision occurred in the northbound lane of route 218, toward the shoulder. Mr. Maybury did not remember making or attempting to make a left-hand turn onto Blagdon Ridge Road. The impact occurred more than thirty feet to the north of that intersection. The court could not conclude why the Maybury vehicle was in the northbound lane or how it got there.

The initial collision between Craig S.'s vehicle and the Maybury vehicle damaged the front-left fender of the latter, and left it sitting in the northbound lane. Shawn B. then hit the Maybury Chevette broadside. The Chevette was torn in half, throwing the two sections off opposite sides of the road. The Mayburys were thrown from the car and landed on the pavement some distance from the impact. Both Mayburys were taken to the hospital. Mrs. Maybury died from injuries suffered in the collision approximately two hours after the accident.

The court explained that it was explicitly discounting the evidence presented by police officers as to the reconstruction of the speed of the juveniles' vehicles, evidence that the State had conceded was improperly admitted. The court then made findings, based, on the above evidence, that: (1) Craig S. was operating the Caprice and Shawn B. was driving the LeMans; (2) Craig S. and Shawn B. were driving recklessly or in a criminally negligent manner; and (3) this recklessness or criminal negligence caused the death of Mrs. Maybury.

■ Both defendants contest the sufficiency of the evidence to establish the elements of the crime. The standard of review is "whether, based on that evidence viewed in the light most favorable to the prosecution, any trier of fact rationally could find beyond a reasonable doubt every element of the offense charged." *State v. Barry*, 495 A.2d 825, 826 (Me.1985). We review the Juvenile Court decision directly. *State v. Arnheiter*, 598 A.2d 1183, 1184 (Me.1991).

## II.

One who "recklessly, or with criminal negligence, causes the death of another human being" is guilty of manslaughter. 17-A M.R.S.A. § 203(1)(A). We have summarized the elements of the crime as follows:

> (1) the defendant acted recklessly, by consciously disregarding a risk, or acted with criminal negligence by failing to be aware of a risk that his conduct could cause the death of another; (2) this disregard or failure to be aware of a risk rises to a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation; and (3) the defendant's recklessness or criminally negligent conduct caused a death.

*State v. Gammon,* 529 A.2d 813 (Me.1987).

Even if the defendants' conduct constituted recklessness or criminal negligence,[1] the State must prove, beyond a reasonable doubt, that this culpable conduct was the cause of Mrs. Maybury's death. 17-A M.R.S.A. § 33 (1983) provides,

> when causing a result is an element of a crime, causation may be found where the result would not have occurred but for the conduct of the defendant operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the defendant was clearly insufficient.

The court explicitly found that the collision and ensuing death would not have occurred but for the conduct of both defendants. It also found that any misconduct by Mr. Maybury was not clearly sufficient to produce the result and that the conduct of the defendants was not clearly insufficient to produce the result. These conclusions, however, are inconsistent with the finding that it could not determine how the Maybury vehicle came to be at the collision site, and they are not supported by the evidence adduced at the trial.

▪▪▪ Mrs. Bomengen testified that she could see the juveniles' cars approaching over the roof of the Maybury vehicle for two seconds before it began to turn left across their lane. She had time to exclaim, "Oh, the grey car is going to make a turn and here comes another car." Mr. Maybury did not remember seeing any cars coming, nor did he remember making a turn. Without sufficient proof as to how Maybury's car came to be headed south in the northbound lane some thirty feet before it reached the Blagdon Ridge Road intersection, the court lacked a factual foundation to determine whether the juveniles' misconduct caused the accident. Under any number of scenarios, consistent with the limited evidence, the juveniles might have been unable to avoid a collision notwithstanding the prudent operation of their vehicles. In these circumstances, the finding that the accident would not have occurred but for the defendants' conduct can only be characterized as speculative.[2]

Because we find that the element of causation was not proven beyond a reasonable doubt, we vacate the judgment.

The entry is:

Judgment vacated.

Remanded to the Superior Court with direction to remand to the Juvenile Court for dismissal of the juvenile petition.

ROBERTS, GLASSMAN, and RUDMAN, JJ., concurring.

---

1. We note that the task of assessing whether the defendants' conduct constituted a "gross deviation" from the reasonable person standard is complicated by the fact that the State has failed to adduce evidence of the course the Maybury vehicle followed. Because we vacate the conviction on other grounds, we decline to address this issue.

2. In addition to "but for" causation, the State must prove either that Mr. Maybury's conduct alone was "not clearly sufficient" to cause death or that the juveniles' conduct alone was "not clearly insufficient" to do so. *State v. Crocker,* 431 A.2d 1323, 1325 (Me.1981); 17-A M.R.S.A. § 33. We note that, although not essential to the decision, the finding that any misconduct by Mr. Maybury was not clearly sufficient to cause death turns on exactly what he did. Given the limited evidence, this finding was also error.

WATHEN, C.J., with whom CLIFFORD, J. joins, dissenting.

I respectfully dissent. This Court rejects a finding of causation on the theory that because Mr. Maybury may have turned directly into the oncoming line of traffic, Mrs. Maybury would likely have been killed regardless of defendants' negligence or recklessness. The Court ignores the factual findings made by the trial judge concerning the crucial role that defendants' inattention, speed, and tailgating played in the accident.

In the course of an extensive written opinion, the trial judge made the following findings:

> The fact that the red LeMans was tailgating and the part that the tailgating played in the accident was demonstrated by the testimony of Anthony Plant who was in the front passenger seat of [Shawn B.'s] vehicle. Plant testified that as they came out of the dip immediately prior to the Blagdon Ridge Road intersection, what he could see was [Craig S.'s] brake lights come on, [Craig S.] swerving off the road, and only then could he see the Maybury vehicle which was located broadside in the roadway. Apparently, [Shawn B.] had no time to react in an effective way.
>
> . . . .
>
> [Shawn B. and Craig S.] acted in concert with one another. [Craig S.] set the pace which [Shawn B.] elected to follow.... [Shawn B.] did not need to drive in the fashion in which they did if either did not wish to do so.
>
> . . . .
>
> The Court is satisfied that regardless of the reason for Mr. Maybury's vehicle being positioned in the north bound lane of Route 218 in the area of the intersection, and considering that Tony Plant saw the Maybury vehicle approaching the intersection from a distance of 8⁹⁄₁₀ of a mile, it is obvious that the Maybury vehicle was there to be seen by both [Craig S. and Shawn B.], and the Court is satisfied that had [Craig S. and Shawn B.] observed what was there to be seen, had they not been traveling at an excessive rate of speed which the Court determines to be in excess of 45 m.p.h. and imprudent in both instances upon entering the rise some 486 feet distant from the intersection, and had they not been acting in concert by operating their vehicles within 1–3 car lengths from one another, and had they instead been operating within the speed limit and had been operating their respective vehicles a safe distance apart from one another, had they exercised that degree of judgment and care that a reasonably prudent person would be expected to exercise upon approaching an intersection, then in that event, the Court is satisfied that both [vehicles] could have slowed or stopped so as to have avoided the collision. For that reason, the Court is satisfied that but for the conduct of [Craig S. and Shawn B.] the collision would not have occurred.
>
> . . . .

Given the trial judge's findings and analysis, I believe causation has been sufficiently proven. In effect, the court found that by tailgating, the defendants increased the risk because the field of vision from the second vehicle was obstructed by the first. The trial judge was entitled to find that when the Maybury vehicle appeared, the first vehicle struck it a glancing blow leaving it in the center of the road, and the second vehicle had "no place to go." The tailgating, taken in combination with inattention and speed on the part of both drivers, produced a fatal collision. Notwithstanding Mr. Maybury's action in making the left turn, this was an accident that could otherwise have been avoided. I would affirm the judgment.